S. E. LASZLO *v.* UNITED STATES (No. 4263)[1]

United States Court of Customs and Patent Appeals, October 30, 1939

*Puckhafer, Rode & Rode* (*John D. Rode* of counsel) for appellant.

*Webster J. Oliver,* Assistant Attorney General (*William J. Vitale,* special attorney, of counsel), for the United States.

[1] C. A. D. 76.

[Oral argument October 10, 193℃, by Mr. John D. Rode and Mr. Oliver]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court (First Division) overruling a protest of appellant against the classification and assessment with duty by the collector of the port of New York of certain merchandise under the provisions of paragraph 1513 of the Tariff Act of 1930. The merchandise consists of 800 articles invoiced as "Diana air guns," of different models, weights, and values. They were classified by the collector as toys under said paragraph 1513 and assessed with duty at the rate of 70 per centum ad valorem. Appellant protested this classification, claiming the merchandise to be dutiable under paragraph 397 as manufactures of metal at 45 per centum ad valorem, or alternatively under paragraph 372 as machines not specially provided for, at 27½ per centum ad valorem.

The pertinent parts of paragraphs 1513, 372, and 397 read as follows:

PAR. 1513. * * * all other dolls, parts of dolls (including clothing), doll heads, toy marbles, toy games, toy containers, toy favors, toy souvenirs, of whatever materials composed, air rifles, toy balloons, toy books * * * bound or unbound, and parts thereof, garlands, festooning and Christmas tree decorations made wholly or in chief value of tinsel wire, lame or lahn, bullions or metal threads, and all other toys, and parts of toys, not specially provided for, 70 per centum ad valorem. As used in this paragraph the term "toy" means an article chiefly used for the amusement of children, whether or not also suitable for physical exercise or for mental development. The rates provided in this paragraph shall apply to articles enumerated or described herein, whether or not more specifically provided for elsewhere in this Act.

PAR. 372. * * * all other machines, finished or unfinished, not specially provided for, 27½ per centum ad valorem: * * *.

PAR. 397. Articles or wares not specially provided for, * * * if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, but not plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 45 per centum ad valorem.

Upon the trial the Government conceded that the articles were improperly classified by the collector and are not toys.

Only one witness testified in behalf of appellant. Samples of the involved articles were introduced in evidence, and also a catalogue issued by appellant describing articles similar to those here involved. The Government offered no evidence.

Upon the evidence produced the trial court held that the involved articles were air rifles, eo nomine provided for in paragraph 1513, and accordingly overruled the protest without, however, affirming the

classification of the merchandise by the collector as toys. Judgment was entered accordingly, and from such judgment this appeal was taken.

That the involved articles are air rifles in fact is not denied by appellant, but it is contended by him that they are not air rifles within the meaning of that term as used in paragraph 1513, and that the only air rifles there provided for are such as are in fact toys.

Funk & Wagnalls New Standard Dictionary defines an air rifle as follows:

air-rifle, n.   A self-loading rifle which impels its missle by compressed air.

The term air gun is defined in said dictionary as follows:

air-gun, n.   An air-rifle.

Appellant, in his own behalf, testified that articles such as are here involved are bought and sold as air rifles, and his catalog in evidence so describes them.

Appellant contends that a mere reading of paragraph 1513 shows that it was obviously the intent of Congress to include therein only air rifles chiefly used for the amusement of children, and he relies upon certain statements before the Committee on Ways and Means of the House of Representatives when the bill which eventually became the Tariff Act of 1922 [wherein for the first time the provision for air rifles appeared in the toy paragraph] was under consideration.

Appellant invokes the doctrine of *noscitur a sociis* in the construction of the term "air rifles."

The only question before us is whether the term "air rifles" should be given a restricted meaning in view of the provision therefor being contained in the toy paragraph, 1513.

The *eo nomine* provision for air rifles first appeared in the tariff act of 1913, as follows:

132.  Muskets, air-rifles, muzzle-loading shotguns and rifles, and parts thereof, 15 per centum ad valorem.

In the Tariff Act of 1922 the provision was dropped from the paragraph providing for muzzle-loading shotguns, etc., and was inserted for the first time, as hereinbefore noted, in the toy paragraph, being paragraph 1414 of that act.

In the Tariff Act of 1930 the term appears only in paragraph 1513.

It is the Government's contention that paragraph 1513 embraces other things than toys, and therefore the doctrine of *noscitur a sociis* has no application, and that all air rifles of every kind and description are embraced in paragraph 1513.

The Government relies upon our decision in the case of *S. S. Kresge Co.* v. *United States*, 25 C. C. P. A. (Customs) 1, T. D. 48975, in support of its contention that the provisions of paragraph 1513 are not

confined to articles that are toys. In that case certain Christmas-tree decorations were involved. In our opinion we stated:

It seems quite evident that it was the intent of the collector to classify these articles for duty, as decorations made in chief .value of bullions, under the provision of the statute, paragraph 1513, "garlands, festooning, and Christmas tree decorations made wholly or in chief value of tinsel wire, lame or lahn, bullions, or metal threads."

It furthermore appears that there was no intent by the collector to classify them as toys.

\* \* \* \* \* \* \*

\* \* \* There is no presumption that the articles were classified as toys, because it is quite evident that they were not considered as such by the customs officers.

It is quite clear from the foregoing that we regarded the provision for "Christmas-tree decorations" as embracing articles distinct from toys, and that though named in paragraph 1513 they are not required to be toys for classification thereunder.

Of course, if it was the intention of Congress to include in paragraph 1513 articles which are not toys, then the doctrine of *noscitur a sociis* has no application, and the *eo nomine* designation of air rifles will include all such rifles of every description.

In the case of *United States* v. *Downing & Co.*, 17 C. C. P. A. (Customs) 194, T. D. 43645, we had under consideration the dutiable classification of certain jewelers' tweezers, there being an *eo nomine* designation of "tweezers" in paragraph 354 of the Tariff Act of 1922, which paragraph, among other things, provided for "cuticle knives, corn knives, nail files, tweezers, hand forceps, and parts thereof." It was contended by the importer that the doctrine of *noscitur a sociis* should apply, and that jewelers' tweezers should not be included in the provision. We declined to apply this doctrine and in our opinion said:

We cannot legislate. If the Congress meant to restrict the meaning of the word "tweezers" in said paragraph 354, it might easily have done so. It is significant that in the other articles enumerated it did so; for instance, *cuticle* knives, *corn* knives, *nail* files, *hand* forceps. It did not say *hand* tweezers or *manicure* or *pedicure* tweezers, but simply "tweezers." This includes all tweezers, except such as are more specifically described as surgical instruments, or otherwise, and prevents the greater portion of such instruments from being relegated to the basket clause of manufactures of metal.

There might be room for the application of the doctrine of *noscitur a sociis* if some of the other articles specifically named in this statute were in question; as, for example, "corn knives" or "nail files." These expressions are capable of two meanings, and they are therefore ambiguous and uncertain. The court might well hold that the *noscitur* rule would apply in such cases and that the articles were to be restricted to knives and files used in manicuring or pedicuring. But for us to apply the rule in the case of "tweezers" would be akin to our construing the term "air rifles," as it appears in the toy paragraph of the Tariff Act of 1922, 1414, without any other considerations than the language of the paragraph itself, as applicable only to such air rifles as are used for toys.

Of course the latter part of the quotation is *dictum* as applying to air rifles, but we evidently had the thought in using the illustration that the provision for air rifles in the toy paragraph, 1414, of the Tariff Act of 1922, was clearly not restricted to such air rifles as were toys.

In the above quotation it will be noted that we commented upon the fact that the provision there in question was for tweezers without qualification, while for other articles qualifications were made, such as *cuticle* knives, *corn* knives, etc. So in the case at bar it will be observed that the articles *eo nomine* named immediately preceding the provision for air rifles are *toy* marbles, *toy* games, *toy* containers, *toy* souvenirs; then comes the provision for air rifles, without qualification, and immediately following the articles named are *toy* balloons and *toy* books. It would seem clear, in view of the above, that if Congress had intended to embrace in paragraph 1513 only such air rifles as were toys, it would have used the term "toy air rifles."

Considering this fact, together with the fact that the provision in paragraph 132 of the tariff act of 1913 was for air rifles of every description, and the only provision for air rifles in the Tariff Act of 1930 is found in paragraph 1513, and the further fact that there are other articles *eo nomine* designated in paragraph 1513 which are not toys, the conclusion follows that air rifles of every description are dutiable under said last-named paragraph.

The trial court reviewed several previous decisions of that and of other Federal courts upon the dutiable classification of dolls under previous tariff acts, wherein it was held that only dolls which were in fact toys were included in the toy paragraph, and it calls attention to the fact that in the case of *United States* v. *Schmidt*, 13 Ct. Cust. Appls. 252, T. D. 41200, we affirmed such a holding upon the ground of legislative adoption of judicial decisions.

These cases require no discussion by us for the reason that paragraph 1513 of the Tariff Act of 1930 differs greatly from previous provisions in other tariff acts with relation to dolls, and it would seem that under said paragraph all dolls, whether toys or not, are included therein. However, that question is not before us, and it is not necessary to determine it here.

With respect to the legislative history of the provision for air rifles invoked by appellant, we would observe that, even assuming that the term "air rifles" is ambiguous, we cannot agree with him that such history shows that Congress intended to restrict the meaning of the term "air rifles" as used in paragraph 1513 to such air rifles as were in fact toys.

We think the trial court came to the right conclusion and its judgment is *affirmed*.